1
2
3
4
5
6 **IN THE UNITED STATES BANKRUPTCY COURT**
7 **FOR THE DISTRICT OF ARIZONA**
8

9 In re:                                    )    Chapter 7
                                           )
10 EDWARD KILE,                            )    No. 4-04-bk-02237-JMM
                                           )
                          Debtor.          )    **MEMORANDUM DECISION**
11 _____            )
12

13         Before the court is a fee application filed by the Debtor's chapter 11 counsel, who seeks

14 fees for such representation in the amount of $80,764, together with costs of $2,135.73.

15         This matter has been deferred for ruling, pending the disposition of related matters. The

16 application has drawn an objection from one party, the "Mudge Group," and tacit approval or neutrality

17 by the trustee, who has attempted to forge a universal settlement relative to the distribution of the estate's

18 monies on hand.

19

20 **I. FACTUAL AND PROCEDURAL BACKGROUND**

21

22         This is not the first bankruptcy case to deal with the only significant asset of the estate,

23 a piece of residential real property in Solana Beach, California. That property was, at the time this, and

24 the prior case, were filed, home to the Debtor and his wife Robin.

25

26

h:\wp\orders\

## A. The Solana Beach Residence

The Debtor and his wife Robin, lived in a single-family residence in Solana Beach, California. They executed several deeds of trust on the property, securing debts of $493,400 and $164,500.

## B. The Short-Lived Ribsy Bankruptcy

When the Debtor and his wife began experiencing financial difficulties, and the Solana Beach residence became the subject of a foreclosure by the Mudge Group, legal life for the Kiles picked up its pace.

On January 1, 2002, the Debtor and his wife purported to transfer the Solana Beach house to their wholly-owned limited liability company called "Ribsy Productions." Then, Ribsy filed a voluntary chapter 11 proceeding in the Southern District of California on May 29, 2003. The judge assigned to the case was the Honorable Louise Adler.

The Mudge Group[1] filed for stay relief, and the court granted it, finding, among other things, that a putative transfer from the Kiles to Ribsy was unrecorded and thus ineffective to invoke the protections of the automatic stay. Therefore, because of the ineffective transfer attempt, the Solana Beach property was never "property of the estate."

Ribsy's reorganization plan was declared by Judge Adler to be "facially unconfirmable," and on March 17, 2004, Judge Adler dismissed the case, with a <u>180-day</u> bar to refiling. (See Ex. 2 to Dkt. 16, administrative file 04-2237.)

---

[1] The "Mudge Group" is the name sometimes used for a collection of the following entities: Federal Home Loans Corporation, Kenneth Mudge and Leora Mudge, and Lincoln Trust Company, in their respective capacities as Trustees of the Mudge Trust.

## C. The Foreclosure

The Mudge Group, upon the dismissal, continued with its pending foreclosure on the Solana Beach residence. It completed that sale on March 29, 2004, when it sold it, at public auction, for $410,000 to Mark and Carol Campbell. The Campbells were *bona fide* purchasers with no previous connection to any of the other parties. The Mudge Group's lien of approximately $135,612.90 was paid from the proceeds.

## D. Edward Kile Files Chapter 11 In Arizona

Now begins the Arizona saga. On May 6, 2004, Edward Kile, without his wife, Robin, filed an individual chapter 11 in Arizona. Mr. Kile's connections with this district are tenuous at best. Mr. Kile never filed either a plan or disclosure statement, was severely delinquent in filing monthly operating reports or fees, and eventually his case was converted to a chapter 7 on June 29, 2005. Mr. Kile continued to reside with his wife in the California home, and virtually of the property is located in that state.

## E. The Solana Beach Litigation[2]

Mr. Kile's sole reason, it would appear, for filing a chapter 11 case in Arizona, was to continue to prosecute two-party litigation over the Solana Beach residence in an inconvenient venue, using chapter 11 as a pretext and gaining a cheap stay - the automatic one of § 362(a). Since foreclosure had already occurred when he filed the Arizona chapter 11 case, he elected to litigate over whether the foreclosure had been properly conducted. A trial on this matter was held in the bankruptcy court on

---

[2]    Attached as "Appendix A" to this Memorandum Decision is the Memorandum Decision docketed November 8, 2004 in that litigation.

November 3, 2004, at which time Mr. Kile presented virtually no credible evidence as to what missteps the foreclosing entity or its agents had made. In addition, he dragged the Campbells into the fray, costing them time, expense, and uncertainly - when all they had done was pay $410,000 at a duly-noticed trustee's sale.

The litigation was frivolous, from start to finish. Mr. Kile's testimony was not credible, the legal arguments made by his counsel (the same counsel applying for fees here) were spun of gossamer thread, and at the end, the court found that the bankruptcy case itself was filed in bad fath, and for an improper purpose, to wit, to delay and harass creditors.

## F. Picking Up the Pieces

With no way to reorganize, the chapter 11 collapsed, and Mr. Kile's case was converted to chapter 7, on June 29, 2005. A trustee, Daniel Dominguez, was appointed. The trustee immediately discovered a significant asset. The Solana Beach property, with liens of only approximately $135,000 and a foreclosure sale purchase price of $410,000, had generated surplus proceeds of approximately $274,287.10.

As litigation over entitlement to those proceeds mounted, the trustee formulated a compromise with the Debtor, his non-filing wife, and the Debtor's attorney. The compromise application was filed on December 9, 2005, in Adversary 05-09, and after a hearing, the court took it under advisement until it could determine (1) the direct claims against the surplus, and (2) the Debtor's counsel's fee application for work done in the chapter 11 case.

The Mudge Group claim to the proceeds was decided on May 11, 2006, in Adversary 05-09. All that remains undecided are the issues with respect to chapter 11 counsel's claim for fees and costs.

## II. COMPENSATION TO AN OFFICER OF THE ESTATE

### A. General Responsibilities of Debtor's Counsel

The attorney for a debtor-in-possession represents a fiduciary to the bankruptcy estate. All such officers, in order to represent such entity, and to be paid, must be first appointed by the court. 11 U.S.C. § 327(a). In this case, the Debtor's counsel was appointed on June 1, 2004.

In his Disclosure of Compensation Form 2016, Debtor's attorney Matthew R.K. Waterman noted that his fee arrangement was:

- Hourly at $250 per hour; and
- Deposit of a $10,000 retainer into his trust account (Administrative file 04-2237; Dkts. 9, 20).

Pursuant to 11 U.S.C. § 330(a)(1)(A), a court "may" award a professional person "reasonable compensation for actual necessary services rendered by the . . . professional person . . . ." In addition, that person may be awarded "reimbursement for actual, necessary expenses."

Before discussing the fee application in more detail, the court notes that it is the law of the case that the chapter 11 proceeding was initiated in bad faith, and was "designed only to manipulate the bankruptcy process and delay and harass creditors." (See Memorandum Decision attached as Appendix A.)

### B. Services Performed by Debtor's Counsel

A review of the case, both the administrative phase and with regard to the adversary proceeding, reflects that counsel's time was essentially devoted to:

1.    Preparation of petition, statement of affairs and schedules;
2.    Keeping homeowner's insurance in effect;

3. Responses and appearances related to stay relief;

4. Extending the deadline for filing a plan and disclosure statement (entirely dependent upon the outcome of the unnecessary litigation);

5. Attaching cover sheets to the six Monthly Operating Reports filed by the Debtor;

6. Filing a response (taking no position) to the U.S. Trustee's motion to convert or dismiss; and

7. Prosecuting Adversary No.04-61.

Each will be discussed in turn.

### 1. **Preparation of schedules, other routine duties**

Debtor's counsel has filed a detailed fee application for the routine tasks of administering a chapter 11 bankruptcy case, including:

- preparation of the petition, statement of affairs and schedules;
- filing monthly operating reports
- providing required documents to the U.S. Trustee's office
- employment petition and order; and
- attending the §341(a) creditors' meeting and the case management hearing

For these tasks, Debtor's counsel seeks fees for himself, his partner, and a paralegal, as follows:

**Case administration (petition, employment, schedules, monthly reports,
California litigation, case management hearing)**

| M. Waterman | 5.5 | $1,375 |
|---|---|---|
| Paralegal | 22.8 | 2,052 |
| **Total** | **28.3** | **$3,427** |

**Documentation requested by U.S. Trustee**

| M. Waterman | 2.3 | $575 |
|---|---|---|
| Paralegal | 5.8 | 522 |
| **Total** | **8.1** | **$1,097** |

These tasks total a request of $4,544.

The schedules and statement of affairs are not complicated; in fact, they are quite simple for a chapter 11 case. Except for some speculation and generous guesswork as to what certain causes of action might be worth - in the optimistic world of this Debtor - the Debtor has no significant asset except for the Solana Beach property to which he so desperately clung throughout this case. On the creditor side, the debts are not numerous. And, in the statement of affairs, most of the questions asked have the "None" box checked.

The six (6) monthly operating reports filed by the Debtor reflect a <u>total</u> income of but $100, and expenses paid of $2,400, for a total deficit of $2,300. The Debtor was not employed when he filed, and his "consulting" business never reflected any income. Where even the $100 came from is a mystery known only to the Debtor. It could not have taken counsel's office more than five minutes per operating report to see that, basically, the Debtor had put hardly any number but "-0-" into the reports. And, it would take but another five minutes to attach the same cover sheet (changing only the month) and sending it over to be filed.

In sum, the $4,544 will be allowed as a reasonable fee for these basic and uncomplicated tasks, recognizing that there would be necessary conversations with the Debtor and others in order to gather together the reported information, and to perhaps formulate a chapter 11 strategy.

## 2. **Homeowner's policy**

The Debtor's counsel seeks $2,809 for filing pleadings and negotiations over the renewal of a homeowner's policy on the Solana Beach property. Although one might quibble as to whether too much time was spent on such a mundane task, the court will allow it because it did protect and preserve the property. The time sheets reflect:

| M. Waterman | 10.3 | $2,575 |
|---|---|---|
| Paralegal | 2.6 | 234 |
| **Total** | **12.9** | **$2,809** |

## 3. **Stay relief**

Much time was devoted to the Debtor's (successful only in delaying) attempts to fend off stay relief while he promised spectacular results from pending litigation in Adversary 04-61. Ultimately, that litigation fizzled, dying not with a bang but a whimper. It will be discussed later. But the Debtor's counsel seeks $9,646 for the effort, as follows:

| M. Waterman | 35.2 | $8,800 |
|---|---|---|
| K. Waterman | 1.6 | 360 |
| Paralegal | 5.4 | 486 |
| **Total** | **42.2** | **$9,646** |

For the effort and need involved, this amount of time was grossly excessive. At most, the time to respond on paper, and appear in court–only to state that the outcome of collateral litigation would be dispositive, would be in the range of $800 - $900. The court will allow $800 for this effort.

### 4. **Plan filing extension**

The Debtor's counsel billed $888 toward a motion to extend the time to file a plan, and respond to objections, as follows:

| M. Waterman | 2.4 | $600 |
|---|---|---|
| Paralegal | 3.2 | 288 |
| **Total** | **5.6** | **$888** |

This amount will be allowed.

### 5. **U.S. Trustee's motion to dismiss**

The Debtor's counsel responded to the U.S. Trustee's motion to dismiss or convert, taking no position. A fee of $100 will be allowed for that review and coming to that obvious conclusion.

### 5. **Adversary 04-61**

By far, the great bulk of counsel's time was devoted to Adversary 04-61, where the Debtor, as Plaintiff, attempted to set aside a validly-conducted trustee's sale on the Solana Beach property. This litigation was commenced on July 12, 2004, and it was prosecuted to the hilt. It terminated after trial, in final judgment on November 30, 2004. For this effort, Debtor's counsel's office expended the following time:

### Litigation

| M. Waterman | 72.3 | $18,075 |
|---|---|---|
| K. Waterman | 6.4 | 1,440 |
| Paralegal | 8.6 | 774 |
| **Total** | **87.3** | **$20,289** |

h:\wp\orders\

9

**Motion to dismiss, trial, and appeal (voluntarily dismissed)**

| M. Waterman | 142.3 | $35,575 |
|-------------|-------|---------|
| Paralegal | 21.7 | 1,953 |
| **Total** | **164.0** | **$37,528** |

**Sanctions**

| M. Waterman | 3.7 | $925 |
|-------------|-----|------|
| Paralegal | 4.4 | 396 |
| **Total** | **8.1** | **$1,321** |

These components of the adversary litigation total $59,138.

This litigation is undeserving of <u>any</u> compensation, because it was frivolous, harassment, unwinnable, and absolutely unnecessary to the prosecution of a legitimate bankruptcy case. Accordingly, the court will award neither fees nor costs for this unworthy effort.

The litigation should never have been brought, and frankly, neither should the chapter 11 have been filed in the first place. Debtor's counsel is an experienced and competent bankruptcy attorney, who enjoys a good and solid reputation in this court. Therefore, it is surprising that counsel accepted this case, and then chose to ride it to the - very bitter - end. For some unknown reason, counsel exuded unwarranted delusional confidence in the potential of this Quixotic quest.

Counsel knew or should have known that, only two months before this chapter 11 was filed, another bankruptcy judge - dealing with the same Solana Beach property and the Debtor's wholly-owned entity - had dismissed the case with a six-month <u>bar to refiling</u>. The purpose of the bar was obvious - to allow no further interference in the legitimate efforts to foreclose the Solana Beach property.

Counsel should have known that his Debtor-client, Mr. Kile, had been transferring the same property back and forth between himself and his wholly-owned entity, Ribsy Productions, solely to avoid imminent foreclosure of his Solana Beach residence. These transactions were without consideration and were obvious fraudulent conveyances.

Counsel should have known that Mr. Kile had no serious connection with the District of Arizona, and had not resided here for a period of 180 days prior to filing.

Counsel should have known that if Mr. Kile had a legitimate basis for challenging a trustee's sale, that he could have asserted that claim in the California state courts, not in the federal bankruptcy court in the District of Arizona, an inconvenient venue for all concerned.

Counsel should have known that this was a mere two-party dispute. *In re Landmark Capital*, 27 B.R. 273 (Bankr. D.Ariz. 1983) (case dismissed as two-party dispute). As such, reorganization was essentially impossible.

Counsel should have known that he had no facts upon which to mount an all-out challenge to a validly-conducted trustee's sale. This, in itself, represented a breach of ethics and, were the court so inclined, was also a breach of Bankruptcy Rule 9011's admonition not to prosecute a case for an improper purpose, nor to harass others or cause unnecessary delay or needless increase in the cost of litigation. FED. R. BANKR. P. 9011(b)(1). This case was devoid of legal, factual, or evidentiary basis. See FED. R. BANKR. P. 9011(b)(2), (3), and (4); see, also, Arizona Rules of Professional Responsibility, E.R. 3.1.

The Bankruptcy Code, 11 U.S.C. § 330, authorizes a court to award compensation for actual <u>necessary</u> fees and costs. The court finds that the litigation involved in Adversary 04-61 was unnecessary, and constituted only continued ongoing abuse from a Debtor whose chapter 11 case was filed in utter bad faith.

## IV. <u>THE LAW</u>

Section 330(a)(1)(A) provides that an attorney may be awarded "reasonable compensation for actual, necessary services" rendered by the attorney. (Emphasis added). This section also states, in relevant part:

Case 4:04-bk-02237-JMM    Doc 133    Filed 06/08/06    Entered 06/08/06 16:17:28    Desc
Main Document    Page 11 of 29

(3)(A) In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including -

    (c)    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

<div align="center">*   *   *</div>

(4)(A) [T]he court shall not allow compensation for . . .

<div align="center">*   *   *</div>

    (ii)    services that were not –

        (I)    reasonably likely to benefit the debtor's estate; or

        (II)    necessary to the administration of the case.

"[A]n attorney fee application in bankruptcy will be denied to the extent the services rendered . . . did not benefit the estate." *In re Crown Oil*, Inc., 257 B.R. 531, 540 (Bankr. D.Mont. 2000), quoting *In re Kohl*, 95 F.3d 713, 714 (8th Cir. 1996). "This rule is based upon the legislative history of the Bankruptcy Code section 330(a) and the unfairness of allowing the debtor to deplete the estate by pursuing its interests to the detriment of the creditors." *Crown Oil*, 257 B.R. at 540, quoting *In re Hanson*, 172 B.R. 67, 74 (9th Cir. BAP 1994).

"Benefit to the estate is not restricted to only monetary benefit." *Crown Oil*, 257 B.R. at 540, quoting *Kohl*, 95 F.3d at 715. "Another important consideration is whether the services rendered 'promoted the bankruptcy process or administration of the estate in accordance with the practice and procedures provided under the Bankruptcy Code and Rules for the orderly and prompt disposition of the bankruptcy cases and related adversary proceedings.'" *Crown Oil*, 257 B.R. at 540, quoting *In re Spanjer Bros., Inc.*, 203 B.R. 85, 90 (Bankr. N.D.Ill. 1996).

"Whether a reorganization is successful is a factor to be considered in determining whether a debtor's counsel's services provide a benefit to the estate." *Crown Oil*, 257 B.R. at 541 (citations omitted). "The Court does not expect the attorney to succeed in every endeavor he undertakes on behalf

1  of the client. But the endeavor for which the estate is expected to pay must be reasonably calculated to

2  produce a benefit to the estate." *Crown Oil*, 257 B.R. at 541, quoting *In re Hunt*, 124 B.R. 263, 267

3  (Bankr. S.D.Ohio 1990). "Chapter 11 cases which lack viable chances of reorganization may place the

4  fees of counsel at risk." *Crown Oil*, 257 B.R. at 541, quoting *In re Offield*, 128 B.R. 548, 550 (Bankr.

5  W.D.Mo. 1991).

6  "Bankruptcy courts must examine the circumstances and the manner in which services are

7  performed and the results achieved in order to arrive at a determination of a reasonable fee allowance."

8  *Crown Oil*, 257 B.R. at 542, citing *In re Mednet*, 251 B.R. 103, 108 (9 th Cir. BAP 2000).

9  The cost of the unworthy litigation effort must fall on the Debtor and his counsel. In

10  addition, Mr. Waterman initially filed a chapter 11 petition about which this court found: "[I]t is apparent

11  that the instant Chapter 11 case is a bad faith filing, designed only to manipulate the bankruptcy process

12  and delay and harass creditors." See November 8,2 004 Memorandum Decision, p. 10, lines 13-15. In

13  general, counsel are ethically obliged not to file such petitions, and may be sanctioned for doing so. See

14  *In re Lederman Enterprises, Inc.*, 997 F.2d 1321 (10th Cir. 1993). In that case, the court found that the

15  attorneys' services in attempting to obtain confirmation for debtor's proposed chapter 11 plan conferred

16  no benefit on the estate and thus were not "necessary" services for which confirmation could be awarded.

17  *Id.*

18  One final comment appears to be in order. While the court will allow an attorneys' fee,

19  plus costs, to be awarded for $10,000 only (this may be drawn down from the retainer on hand), it does

20  so in recognition that - giving Debtor's counsel the maximum benefit of the doubt - maybe, just maybe,

21  there might have been some glimmer of a feasible reorganization plan possible. As any attorney knows

22  who takes these cases, there might be a grain of success lurking in the darkness. Here, we will never

23  know because no plan was ever filed. In recognition of that possibility, in the beginning, and in further

24  recognition of counsel's otherwise good reputation, the court will allow the $10,000 fee for the

25  administrative portion of the case, and nothing more.

26

# V. CONCLUSION

The frivolous litigation in Adversary 04-61, which consumed five (5) months of court procedures, and thousands of defense dollars, rendered no benefit to the estate and was absolutely unnecessary. Added to the unsavory mix is the court's conclusion that the chapter 11 filing has been found to have been filed as a manipulative bad faith filing.

Accordingly, in recognition that the routine duties in this case may have had some arguable justification, which totaled $9,141, the court will allow that amount, and will also allow $859 for preparation of the fee application, and any office costs, thus bringing the total granted fees and costs application to $10,000. Debtor's counsel may draw down the $10,000 retainer for this purpose. No other compensation will be allowed. Debtor's counsel is further admonished not to file future fee requests in this case.

The objection of the Mudge Group to counsel's fee application is SUSTAINED in part, as to all fees and costs in excess of the $10,000 retainer. A separate order is to be filed concurrently herewith. FED. R. BANKR. P. 9021.

DATED:     June **8**, 2006.

_James M. Marlar_
JAMES M. MARLAR
UNITED STATES BANKRUPTCY JUDGE

COPIES served as indicated below this **8** day of June, 2006, upon:

Matthew R.K. Waterman
Waterman & Waterman, P.C.
33 North Stone Avenue, Suite 2020
Tucson, AZ 85701
Email mrkw@watermanlaw.com
Attorneys for Debtor

Scott B. Cohen
Heather M. Fox
Sacks Tierney P.A.
4250 N. Drinkwater Blvd., 4th Floor
Tucson, AZ 85251-3693
Email scott.cohen@sackstierney.com
Email heather.fox@sackstierney.com

Timothy J. Silverman
Holly Nolan
Solomon Grindle Silverman & Spinella
12651 High Bluff Drive, Suite 300
San Diego, CA 92130
Email tim@sgsslaw.com
Email holly@sgsslaw.com

Steven M. Cox
Waterfall Economidis Caldwell Hanshaw &
Villamana, P.C.
5210 E. Williams Cir., #800
Tucson, AZ 85711
Email smcox@wechv.com

Scott D. Gibson
Gibson, Nakamura, & Decker, PLLC
2941 N. Swan Rd., Suite 101
Tucson, AZ 85712-2343
Email: sgibson@gnglaw.com

Jack I. Mann
Gary M. Orlansky
Law Office of Jack I. Mann
1901 First Avenue, Suite 405
San Diego, CA 92101
U.S. Mail

Larry Lee Watson
Office of the United States Trustee
230 North First Avenue, Suite 204
Phoenix, AZ 85003-1706
Email larry.watson@usdoj.gov

Rebecca K. O'Brien
Rusing & Lopez
6262 North Swan Road, Suite 200
Tucson, AZ 85718
U.S. Mail

By /s/ M.B. Thompson
    Judicial Assistant

1
2
3
4
5
6
7
8
9
10
11
12

# **APPENDIX A**

13
14
15
16
17
18
19
20
21
22
23
24
25
26

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| EDWARD KILE, | ) No. 4-04-bk-02237-JMM |
| | ) |
| Debtor. | ) Adv. No. 4-04-ap-00061-JMM |
| ———————————— | ) |
| EDWARD KILE, | ) |
| | ) |
| Plaintiff, | ) **MEMORANDUM DECISION** |
| vs. | ) |
| | ) |
| STATEWIDE GROUP, INC., dba | ) |
| STATEWIDE FORECLOSURE SERVICES; | ) |
| MARK G. CAMPBELL and CAROL A. | ) |
| CAMPBELL, husband and wife; WELLS | ) |
| FARGO HOME MORTGAGE, INC.; EMC | ) |
| MORTGAGE CORPORATION; M. KENNETH | ) |
| MUDGE and LEORA MUDGE, TRUSTEE OF | ) |
| THE MUDGE TRUST DATED MAY 29, 2002, | ) |
| AS TO AN UNDIVIDED 48.6322% INTEREST; | ) |
| LINCOLN TRUST COMPANY, TRUSTEE | ) |
| FBO M. KENNETH MUDGE AS TO AN | ) |
| UNDIVIDED 21.2766%; and FEDERAL HOME | ) |
| LOANS CORPORATION AS TO AN | ) |
| UNDIVIDED 30.0912% INTEREST; ISLA | ) |
| VERDE ASSOCIATION, INC.; STATE OF | ) |
| CALIFORNIA FRANCHISE TAX BOARD; | ) |
| SAN DIEGO COUNTY TAX COLLECTOR; | ) |
| EDWARD C. DOMBO; AND AMERICAN | ) |
| EXPRESS CENTURION BANK, | ) |
| | ) |
| Defendants. | ) |

The court heard evidence in this matter on November 3, 2004. After taking the matter under advisement, and having reviewed the written and oral evidence, as well as the law and the briefs of the parties, the court now rules. The following represents the court's findings of fact and conclusions of law.

h:\wp\orders\kile

## FACTS

The Debtor and his non-debtor wife, Robyn Kile (collectively, "Kiles"), between 1998 and 2000, became indebted to both San Diego Funding ($493,400) and Federal Home Loans Corporation ($164,500).[1] (Ex. 2, 3, 6.) Both the Debtor and his wife agreed with each lender to "due on sale" clauses. (Ex. 2,3.)

The property standing as collateral for the loans was a single family residence located in Solana Beach, California, where the Kiles reside.

By February 26, 2003, the Kiles had fallen onto financial hard times and became in default to FHL. As a consequence, FHL noticed the default pursuant to the California Deed of Trust statutes, and recorded it on February 26, 2003. (Ex. 8.)

Unknown to anyone but the Kiles, the Kiles had purported to convey their respective interests in the Solana Beach home to the Kiles' wholly-owned limited liability company, Ribsy Productions ("Ribsy")[2] (Ex. 65, 66). The Kiles never recorded these documents, and indeed, they were not in recordable form, lacking notarizations. Therefore, said unrecorded transfers, which also violated the "due on sale" provisions of the written agreements, were known only to the Kiles. Mr. Kile's testimony that the putative transfer instruments were signed, as dated "as of January 1, 2002," was not credible. Moreover, there was also no evidence that there was any valid consideration for the transfer.

The FHL foreclosure process continued apace, with the trustee under the Deed of Trust being Statewide Group, Inc. ("Statewide"). (Ex. 4.) Pursuant to California law, Statewide posted, published, and sent out the required mailings. (Ex. 30, 31, 32, 20, 21.) Eventually, on May 30, 2003, the Notice of Trustee's Sale was recorded. (Ex. 13.)

---

[1] The Federal Home Loan promissory note was a participation between FHL (39.2097%), the Mudges (36.4742%), and Applegate (24.3161%). Collectively, these parties will be referred to as "FHL."

[2] Ribsy had been formed in 1998. (Ex. 28.)

h:\wp\orders\kile

2

1    The sale was set for June 27, 2003. (Ex. 13.)

2    On May 29, 2003, in an effort to stave off the foreclosure sale, Ribsy filed a Chapter 11

3    proceeding in the Southern District of California, in San Diego. (Ex. 10, 19.)  Ribsy noted, in its

4    schedules, that it had no income and expenses, but listed an "equitable ownership" in the Solana Beach

5    property.

6    Ribsy's attorney, Jeffrey Vanderveen, notified FHL and Statewide that Ribsy "owned" the

7    residence and maintained that the automatic stay prevented foreclosure.  (Ex. 11, 12.)  Statewide

8    immediately notified Vanderveen that the entity known as Ribsy was nowhere to be found in the chain

9    of title, and that the record owners were still "Edward and Robyn Kile," husband and wife. (Ex. 33.)

10   Thereafter, the Kiles allegedly had the earlier deed notarized on June 6, 2003-- nine days

11   after Ribsy filed Chapter 11-- and recorded the now-completed Quitclaim Deed three days later on June 9,

12   2003. (Ex. 7, 37.)  However, Kile's testimony is not credible on that point, and the court finds that the

13   deeds were not prepared until June 6, 2003.

14   Due to these manipulations, Statewide announced that its sale date of June 27, 2003,

15   would be postponed "until we have a relief order, the case has been closed or the default has been cured."

16   (Ex. 14.)

17   By June 9, 2003, Statewide had finished all necessary and statutory steps to publicize the

18   trustee's sale. (Ex. 38.)  All it did thereafter, until the Ribsy Chapter 11 was dismissed, was to continue

19   its final sale date from time to time. (Ex. 15, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54,

20   55, 56, 57, 58, 60, 61, 62.)

21   Between May 29, 2003 and the ultimate dismissal of Ribsy's bankruptcy case on

22   March 17, 2004, Ribsy lingered in Chapter 11. It filed a Plan and Disclosure Statement (Ex. 29), which

23

24

25

26

1  the San Diego bankruptcy court found to be "facially unconfirmable." (Ex. 24 at 2:1.) The court also
2  pointed out that "record title to the (Debtor's) property was not in the debtor on the date this case was
3  filed." (Ex. 24 at 2:6-7.)[3]

4          On December 29, 2003, the United States Trustee moved to convert the case to Chapter 7,
5  or for dismissal. (Ex. 24.)

6          On March 17, 2004, the bankruptcy court dismissed the case, with an 180-day bar to
7  refiling. (Ex. 26.) Notice of the dismissal was sent to the few creditors and parties in interest on
8  March 18, 2004. (Ex. 27.)

9          On or "effective as of" March 19, 2004, Ribsy purportedly executed a Quitclaim Deed
10 back to the Kiles. (Ex. 16.) As with the earlier documents, that "deed" was neither notarized nor
11 recorded. (Ex. 16.) As with the earlier transfer to Ribsy, there was no evidence provided that there was
12 any consideration in connection with this transfer.

13         The foreclosure sale, which had been postponed so many times, went forward on
14 March 29, 2004, and the property was sold to third-party bidders, Mark and Carol Campbell
15 ("Campbells"). (Ex. 63, 1.) The Campbell were *bona fide* purchasers, without notice of any defects or
16 problems. No evidence was presented to the contrary.

17         On March 30, 2004, eviction proceedings began against the Kiles, whose interests had
18 been foreclosed the day before. (Ex. 17.)

19         On April 14, 2004, Mr. Kile, now acting without an attorney, wrote a letter to Statewide
20 alleging a parade of injuries and seeking $2,000,000 in damages. (Ex. 64.) At trial, Mr. Kile was unable
21 to provide any credible evidence that he suffered any actual damages.

22         Statewide ignored Mr. Kile's demand, so Edward Kile (without Robyn Kile joining), filed
23 a new Chapter 11 case, this time in the District of Arizona.

24

25

26

---

[3]      Ribsy's Plan and Disclosure Statement were objected to by FHL (Mudge).

h:\wp\orders\kile                                    4

1      This Chapter 11 case was filed on May 6, 2004, within the 180-day bar period set forth

2 by the San Diego bankruptcy judge. Indeed, the new filing occurred only 1 1/2 months after the Ribsy

3 dismissal. Although the Debtor here, in his complaint, affirmatively pled it as a suit to protect title, the

4 lawsuit, is, in reality, only another manipulation of the bankruptcy process to avoid eviction and harass

5 the Kiles' creditors.

6      The Kiles remain in the Solana Beach property, pending resolution of this case.

7

8                   **LEGAL ISSUES**

9

10      Although the parties have set forth a number of legal issues for the court to consider, they

11 may be grouped into three:

12         1.    Were there stay violations in the Ribsy bankruptcy case?

13         2.    Did Statewide follow the necessary statutory procedures in

14              order to complete the trustee's sale?

15         3.    Did the Debtor manipulate the bankruptcy Code so that

16              this filing qualifies as a "bad faith" filing?

17

18                 **LEGAL ANALYSIS**

19           1. **Automatic Stay Issues.**

20

21      As of the date of the Ribsy bankruptcy filing, Ribsy had no right, title, or interest in the

22 Solana Beach property, legal or equitable. Judge Louise Adler of the San Diego bankruptcy court so

23 found, and that finding, upon which the dismissal of the Ribsy case was based, was never appealed and

24 is final. As such, it is *res judicata.*

25      Ribsy is an independent legal entity. LLCs are distinct legal entities, separate from their

26 stockholders or members. LCCs are included within the definition of "person" in the California

Corporations Code Section 20999.25(a); *Abrahim & Sons Enterprises v. Equilon Enterprises, LLC*, 292 F.3d 958, 962 (9th Cir. 2002). Under California law, the actions of a corporation or LLC are deemed independent of the acts of its members. WEST'S ANN.CAL.CORP.CODE § 17003.

The automatic stay applies only to property owned as of the commencement of the case. 11 U.S.C. § 362(a). The automatic stay applies to "property of the estate," which includes all of debtor's legal and equitable interests in property as of the commencement of the bankruptcy. 11 U.S.C. §§ 362(a)(3); 541(a). As important, the automatic stay is inapplicable to acts done postpetition with postpetition property of the estate. *In re Plexus Enterprise, Inc.*, 289 B.R. 778 (M.D. Fla. 2002).

The interest which Mr. Kile claims that Ribsy held-- an unrecorded, non-notarized transfer deed to real property--does not rise to a level sufficient to support the invocation of the automatic stay as to third parties. Property rights are governed by state law. *Butner v. U.S.*, 440 U.S. 48 (1979). Under California law, an unrecorded real property instrument is only valid as between the parties thereto and those who have notice thereof. WEST'S ANN.CAL.CORP.CODE § 1217. Conversely, such a document is ineffective and invalid to create restrictions upon those not privy to such secret transfers. Under bankruptcy law, these secret actions transfer no "equitable" rights sufficient to trigger the automatic stay. Under California law, every conveyance of real property must be recorded to be valid against a subsequent purchaser of the property, but an unrecorded instrument is valid only as between parties thereto and those who have notice of it. *In re Weisman*, 5 F.3d 417 (9th Cir. 1993). CAL. CIV. CODE § 1216. Here, no one but the Kiles knew of any "transfer" prior to June 9, 2003. And the Kiles, who also own 100% of Ribsy, took no steps to advise anyone of that alleged "transfer."

Ribsy acquired no interest in the Solana Beach property until the deed to it was recorded, two weeks postpetition. The automatic stay in Ribsy's case, therefore, protected no interest in the Solana Beach property as of the date of the filing, because Ribsy did not own it on the date that it filed Chapter 11. Indeed, the Kiles resided in the property before and since the "transfer" to Ribsy; there were no written "rental agreements" placed into evidence by Mr. Kile (indeed there were no documents of any sort--other than the deed); and Ribsy never became liable on any of the underlying debt.

h:\wp\orders\kile

6

1         Thus, there were no stay violations in the Ribsy case, even if Mr. Kile (the Debtor herein)

2 had standing to assert it.

3         However, Mr. Kile lacks standing to urge a violation of the Ribsy automatic stay. "A party

4 seeking relief under the automatic stay provision must have standing in two respects: constitutional

5 standing and standing under the Bankruptcy Code. *City of Farmers Branch v. Pointer (In re Pointer),*

6 952 F.2d 82, 85 (5th Cir.), *cert. denied sub nom. Pointer v. Carrollton-Farmers Branch Indep. School*

7 *Dist.,* 505 U.S. 1222, 112 S.Ct. 3035 (1992)." Mr. Kile was not listed as a creditor in the Ribsy case and,

8 therefore, lacks standing, then and now, to pursue stay violation remedies on behalf of Ribsy. *In re*

9 *Fondiller,* 707 F.2d 441 (9th Cir. 1983) (party must have pecuniary interest to be afforded standing).

10         Under the Bankruptcy Code, only a party that Congress has designated as a beneficiary

11 of the stay has standing to bring an action to declare a violation of the stay to be void. *James v.*

12 *Washington Mut. Sav. Bank (In re Brooks),* 871 F.2d 89, 90 (9th Cir. 1989). The Ninth Circuit has clearly

13 held that the only legal beneficiaries of the stay are the debtor and the trustee. *Tilley v. Vucurevich (In*

14 *re Pecan Groves of Arizona),* 951 F.2d 242, 245 (9th Cir. 1991).[4] Mr. Kile qualifies as neither.

15         Thus, Edward Kile has not shown the required standing to assert a stay violation in the

16 now-closed Ribsy case.

17         Additionally, any stay violations which could be asserted by Ribsy have been waived. Its

18 case was dismissed and that dismissal order is final. Dismissal essentially returns parties to the *status*

19 *quo.* 11 U.S.C. § 349. Ribsy never complained to the San Diego bankruptcy court about any alleged stay

20 violation, and has not sought to reopen its case. Indeed, to avoid the San Diego bankruptcy court's

21 mandate that Ribsy could not re-file for 180 days, an order designed to prevent continued delay relative

22 to secured creditors' attempts to complete foreclosure, Ribsy simply attempted to transfer the property

23

24     [4]    The Ninth Circuit BAP, in a reference to a Ninth Circuit case, *In re Goodman,* 991
F.2d 613 (9th Cir. 1993), noted that an argument <u>might</u> be crafted to allow a creditor to bring a
25 stay violation action. *In re Spaulding Composites Company, Inc.,* 207 B.R. 899 (9th Cir. BAP
1997). However, these cases need not be discussed here, since Edward Kile was never listed in
26 Ribsy's schedules as a creditor. (Ex. 19.)

1   to the Kiles, and then only Mr. Kile filed this new bankruptcy--within the 180-day prohibited period and
2   one state over from where the property is located. Such an action is a blatant bad faith attempt to harass
3   and delay creditors with valid lien interests in the Solana Beach residence, as well as a fraudulent
4   conveyance. To the extent that any Kile stay applies, it will be terminated and annulled.   *In re Duvar*
5   *Apt., Inc.*, 205 B.R. 196 (9th Cir. BAP 1996); 11 U.S.C. §362(d)(1) (cause).

## 2.   Trustee's Sale Validity Issues

9           The trustee's sale to the Campbells, third-party purchasers, occurred on March 29, 2004.
10  The trustee's deed to the Campbells was recorded on March 30, 2004. The recordation creates a
11  conclusive presumption of validity as to all of the procedures associated with the sale. WEST'S ANN. CAL.
12  CORP. CODE § 2924.
13          Had the Kiles or Ribsy, or whomever else they contend owned the property, wished to stop
14  the foreclosure, their remedy was to proceed before the California Superior Court, state their specific
15  grievances, and obtain injunctive relief. Instead, they chose to rely on the "quick fix" of the Bankruptcy
16  Code and its automatic stay, as a substitute for a Superior Court proceeding. By doing so, they waived
17  their claims to assert, pre-sale, that the sale was improperly conducted, and the defendants in this case
18  are entitled to the protection of the conclusory presumption that the foreclosure procedures were correctly
19  followed.
20          Nor was the stay violated by Statewide's procedure, during the Ribsy bankruptcy case, by
21  the acts of orally postponing the sale date throughout Ribsy's Chapter 11 dismissal date. The Ninth
22  Circuit clearly addressed that issue in *In re Roach*, 660 F.2d 1316 (9th Cir. 1981), when it held that such
23  postponements merely hold the foreclosure process in *status quo*, and that doing so is not a stay violation.
24          Mr. Kile's testimony that he and Mrs. Kile executed deeds to Ribsy "as of January 1, 2002"
25  is not credible. Had a transfer been executed on that date, it should have and would have been recorded.
26  Mr. Kile is a law school graduate, although never licensed as a practicing lawyer. He also holds another

h:\wp\orders\kile                              8

advanced law degree, an LLM. Mr. Kile is sophisticated enough, with law school training, to realize that non-notarized, unrecorded real property instruments have no legal effect as to those who have no knowledge of such documents. A glimpse at the California statutes would have revealed as much.

There was no credible evidence to suggest that such deed was created prior to June 6, 2003, when it was notarized. The unrecorded, non-notarized document, even if created prior to June 6, 2003, was ineffective and did not transfer any rights in real property, "equitable" or otherwise. The court finds, from the evidence, that the transfer deed from the Kiles to Ribsy occurred upon its notarization on June 6, 2003, too late to invoke the Bankruptcy Code's automatic stay provisions.

The same is true of the other, putative transfer deed, this one from Ribsy to the Kiles two days after Ribsy's bankruptcy case was dismissed. (Ex. 6.) Apparently not learning from earlier mistakes, that document was also never notarized and recorded. Therefore, on this record, on the date of Mr. Kile's Arizona Chapter 11, ironically, Ribsy remained the only record owner. Thus, Mr. Kile, individually, had nothing to protect by filing Chapter 11, relying, once again, on unnotarized, unrecorded, and secret transfer documents. He was, in the words of William Shakespeare, "(h)oist with his own petard." *Hamlet*, Act iii, Sc. 4.

In his pleadings, the Debtor asserts that Statewide, on behalf of the trust beneficiaries, violated the California procedures, which are a prerequisite to conducting a valid trustee's sale.

However, the defending parties submitted the recording, posting, publication, and mailing documents that preceded the sale of the Solana Beach residence. These documents complied with California law.

Additionally, the execution and recordation of a Trustee's Deed upon sale creates "*prima facie* evidence of compliance with the statutory requirements "and conclusive evidence thereof in favor of *bona fide* purchasers . . . for value and without notice." WEST'S ANN.CAL.CORP.CODE § 2924.

The Debtor presented nothing to rebut either the conclusive presumption favoring the Campbells, nor any evidence contrary to the *prima facie* validity to be accorded to Statewide's procedural responsibilities.

h:\wp\orders\kile                                         9

The California statute set forth above states:

> A recital in the [trustee's] deed executed pursuant to the power of sale of compliance with all requirements of law regarding the mailing of copies of notices or the publication of a copy of the notice of default or the personal delivery of the copy of the notice of default or the posting of copies of the notice of sale or the publication of a copy thereof shall constitute *prima facie* evidence of compliance with these requirements and conclusive evidence thereof in favor of *bona fide* purchasers and encumbrancers for value and without notice.

The Trustee's Deed (Ex. 1), contains clear statements concerning the necessary publication, posting, recording, and mailing, which satisfy the "recital" required by the statute.

In short, the sale and its procedures were conducted pursuant to law, without defect.

### 3. Bad Faith Filing Issues.

Raised by one of more of the defending parties in their Answers, it is apparent that the instant Chapter 11 case is a bad faith filing, designed only to manipulate the bankruptcy process and delay and harass creditors. Accordingly, the court finds that cause exists to annul, terminate, and dissolve any and all stays in this case that arguably relate or may relate to any interest that the Debtor holds, or asserts that he holds, in the Solana Beach property. 11 U.S.C. § 362(d)(1) (cause to grant stay relief).

### RULING

The Debtor failed to meet his burden of proof with respect to any of the appearing parties, and his case against them will be dismissed with prejudice.

The Debtor also presented no case or cause of action against defendants Edward C. Combo, Isla Verde Association, the San Diego Tax Collector, Wells Fargo Home Mortgage, or EMC

1  Mortgage Corp.[5]  Accordingly, any and all of Debtor's claims against such parties shall likewise be

2  dismissed, with prejudice.

3          The Debtor failed to prove his case, against any defendant or served party, by the

4  necessary preponderance of the evidence.  Moreover, if the Debtor, Robyn Kile (his wife), or any entity

5  related to the Kiles shall file a new bankruptcy proceeding asserting any claims whatsoever to the Solana

6  Beach property, that action, if filed in the District of Arizona, shall be assigned to the undersigned judge.

7  If such filing occurs in any district other than the District of Arizona, that bankruptcy case shall be

8  transferred to the District of Arizona and assigned to the undersigned judge, who will consider whether

9  to retain it or transfer the case to the San Diego bankruptcy court.

10          Additionally, all stays, pursuant to the Bankruptcy Code, will be dissolved, terminated,

11  and annulled.

12          Taxable costs shall be awarded to all of the appearing defendants herein who or which

13  may be entitled to the same pursuant to California law.  Therefore, since many of these matters arise out

14  of contracts wherein the Debtor agreed to pay attorneys' fees, each defendant asserting entitlement to fees

15  shall file an affidavit of actual attorneys' fees incurred and state the grounds therefor, and after a ten-day

16  responsive period, the court will decide whether to award judgment therefor against the plaintiff, Edward

17  Kile, and the community consisting of Edward Kile and Robyn Kile, his wife.  If objections to the

18  attorneys' fees requests are made, the court will consider the objections and rule without further hearing.

---

25    [5]      If such latter two entities are the successors to San Diego Funding's first lien

26  interest, no argument was made or law presented to indicate that any liability or legal theory
    against them is viable.

1     Thereafter, the court will ask the prevailing parties to lodge a proposed form of judgment.

2  The court will not consider motions for reconsideration made by Mr. Kile.  His sole remedy shall be by

3  appeal.

4

5     DATED: November 8th, 2004.

6

7     _____
      JAMES M. MARLAR

8     UNITED STATES BANKRUPTCY JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

| | |
|---|---|
| 1 | COPIES served as indicated below this 8th day of November, 2004, upon: |
| 2 | |
| 3 | Matthew R.K. Waterman<br>Waterman & Waterman, P.C. |
| 4 | 33 North Stone Avenue, Suite 2020<br>Tucson, AZ 85701 |
| 5 | mrkw@watermanlaw.com<br>Attorneys for Debtor |
| 6 | Steven M. Cox |
| 7 | Waterfall Economidis Caldwell Hanshaw & Villamana, P.C.<br>5210 E. Williams Cir., #800<br>Tucson, AZ 85711 |
| 8 | Email scox@wechv.com |
| 9 | Timothy J. Silverman |
| 10 | Solomon, Grindle, Silverman & Spinella<br>12555 High Bluff Drive, Suite 260<br>San Diego, CA 92130 |
| 11 | Email tim@sgsslaw.com |
| 12 | Scott B. Cohen and Heather M. Fox |
| 13 | Sacks Tierney P.A.<br>4250 N. Drinkwater Blvd., 4th Floor<br>Tucson, AZ 85251-3693 |
| 14 | Email scott.cohen@sackstierney.com<br>Email heather.fox@sackstierney.com |
| 15 | |
| 16 | Rebecca K. O'Brien<br>Rusing & Lopez |
| 17 | 6262 North Swan Road, Suite 200<br>Tucson, AZ 85718<br>Email robrien@rusingandlopez.com |
| 18 | |
| 19 | Jack I. Mann and Gary M. Orlansky<br>Law Office of Jack I. Mann |
| 20 | 1901 First Avenue, Suite 405<br>San Diego, CA 92101<br>U.S. Mail |
| 21 | |
| 22 | Office of the United States Trustee<br>230 North First Avenue, Suite 204 |
| 23 | Phoenix, AZ 85003-1706<br>U.S. Mail |
| 24 | |
| 25 | By _MB Thompson_____ |
| 26 | Judicial Assistant |

h:\wp\orders\kile

13