**SIGNED.**

**Dated: June 11, 2009**



_____
**JAMES M. MARLAR**
**U.S. Bankruptcy Judge**

_____

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br>EDWARD KILE,<br><br>Debtor. | Chapter 7<br>No. 4:04-bk-02237-JMM<br>**MEMORANDUM DECISION RE:**<br>**TRUSTEE'S**<br>**(1) APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES;**<br>**AND**<br>**(2) PROPOSED DISTRIBUTION** |

  Before the court are the chapter 7 Trustee's (1) Notice of Proposed Distribution and (2) Application for Compensation (Dkts. 293 and 295). In response, Edward Kile ("Debtor") filed objections. The Trustee replied. A hearing was held on these matters on May 5, 2009. Appearances were made by Debtor pro se, Scott D. Gibson, counsel for the Trustee, and Howard C. Meyers, counsel for party-in-interest Robyn Cahill. The court, having considered the pleadings, argument, the law and the entire record, now renders its ruling.

# **OVERVIEW**

This converted chapter 7 case started out as a chapter 11 filing, in the District of Arizona, on May 7, 2004.[1]  It followed on the heels of another petition that had been filed by Debtor's wholly owned company, Ribsy Productions, L.L.C. ("Ribsy"), in San Diego, California, in order to stave off a foreclosure sale of Debtor's Solana Beach real property.  The property had been conveyed back and forth between Debtor and Ribsy.

Following dismissal of Ribsy's California bankruptcy case, a foreclosure sale took place, on March 29, 2004, and thereafter, the trustee under the deed of trust held approximately $274,287.10 in surplus sale proceeds after payment of the secured liens.

In the Arizona chapter 11 case, Debtor claimed that he co-owned the California property with his former spouse, Robyn Cahill, and also claimed a $100,000 homestead exemption as to the property under Arizona law, ARIZ. REV. STAT. § 33-1101 et seq.  This pleading was filed on June 21, 2004 (Dkt. 18), by inclusion within Schedule C (Exemptions).  Debtor then sued the secured creditors, and others, to set aside the foreclosure sale (Adversary 04-61).

The court ruled against Debtor as to all issues involving the Solana Beach property, and entered judgment on November 30, 2004 (Adversary 04-61, Dkt. 66).  Debtor appealed the order dismissing the complaint, but then later withdrew it.

On June 29, 2005, the chapter 11 case was converted to chapter 7, due to Debtor's failure to comply with the requirements of chapter 11.  Order Converting Case (June 29, 2005; Dkt. 81).  The order of conversion also ordered the sale proceeds ("Funds") to be turned over to the newly appointed chapter 7 Trustee.

Daniel Dominguez was appointed Trustee.  His court-approved counsel was Scott D. Gibson, of Gibson, Nakamura & Green, P.L.L.C, which was appointed on July 25, 2005 (Dkt. 87).

Meanwhile, in another adversary proceeding initiated by a foreclosing creditor seeking access to the Funds (Adversary 05-9), Debtor filed a motion to distribute the Funds to Ribsy,

---

[1] The court takes judicial notice of its own docket.

asserting that, at the time of the foreclosure, Ribsy was the record owner of the property. See Motion for Order Directing Release of Interpleaded Funds (May 12, 2005), Adversary 05-9, Dkt. 24. Later, the Trustee and Kile filed a joint motion to distribute 50% of the Funds to Kile's bankruptcy estate, for his member share in Ribsy. See Joint Motion to Approve Proposed Disposition of Interplead [sic] Funds (December 9, 2005), Adversary 05-9, Dkt. 58. The court did not act upon those motions, and the adversary proceeding was otherwise resolved and dismissed, leaving the Trustee still holding the Funds.

On November 29, 2005, the Trustee reported that he was holding estate funds (Dkt. 112), and on November 30, 2005, the court noticed a claims bar date of March 2, 2006 (Dkt. 113).

At an August, 2006 hearing on the Trustee's motion to dismiss the case (which motion was later withdrawn), the court and Debtor discussed Debtor's pending lawsuit against the secured creditors in California state court. The Debtor had initiated that litigation on his own. The court advised Debtor that the litigation should be removed to bankruptcy court. Debtor assured the court that his litigation did not involve a claim against the Funds. See Minute Entry of August 28, 2006 hearing, Dkt. 157.

Between August 2006 and May 2007, the Trustee filed objections to 18 proofs of claim, which were sustained by the court. During the summer of 2007, Debtor also filed objections to several proofs of claim.[2] Debtor has alleged that he saved the estate $65,000 through these objections. However, the court also overruled some of Debtor's objections, including those to Claim Nos. 13 and 14. See Dkts. 201, 202, 280.[3]

Throughout the case, on three different occasions, the court awarded interim compensation to the Trustee's counsel, without objection. Those payments were made from the

---

[2] The debtor of a surplus estate has standing to dispute creditors' claims. See In re Fondiller, 707 F.2d 441, 442 (9th Cir.1983); Kapp v. Naturelle, Inc., 611 F. 2d 703, 707 (8th Cir. 1979).

[3] These rulings were made on December 19, 2006 and February 12, 2008. Hence, the Debtor's motion made on April 6, 2009 (Dkt. 291), to again object to claims 13 and 4, is denied. The prior rulings on those claims are the law of the case, and res judicata.

Funds. In October 2007, the court approved the uncontested final application for compensation. That order was not appealed and became final. (See Dkts. 125, 132, 155, 166, 270, 274.)

On May 24, 2007, Debtor filed an Amended Schedule C, claiming a $150,000 exemption in the proceeds from the foreclosure sale of the Solana Beach property, this time pursuant to California's automatic homestead exemption statute, CAL. CIV. PROC. CODE § 704.730(3). (Dkt 238.)

The next year, Debtor did not object to his ex-wife's motion for direct payment of one-half of Debtor's "surplus funds" on the grounds that she was a title owner of the Solana Beach property. In May 2008, the court granted her motion, and the order became final (Dkt. 284).

In March 2009, the Trustee, in order to complete the administration of this chapter 7 case, filed a ten-page Final Report and Account, Trustee's Application for Compensation and Trustee's Notice of Proposed Distribution. The Trustee indicated that from total receipts of $281,468.66, he had paid out $115,968.35 and had a balance of $165,500.31 cash on hand. After the proposed distributions for priority and unsecured claims, the Trustee proposed to distribute surplus Funds of $15,503.17 to Debtor and $15,503.16 to Robyn Cahill (Debtor's ex-wife).

The Trustee requested the maximum allowable fee under § 326(a), in the sum of $13,740.66, and reimbursement of $240.64 in costs. The fee was based on a statutory calculation based upon the distributions to creditors.

Mr. Kile objected.

## **ISSUES PRESENTED BY THE DEBTOR'S OBJECTIONS**

The Debtor, Mr. Kile, filed objections to the Trustee's request for compensation and for distribution. Those objections fall into distinct areas. They are:

1) Is the Trustee entitled to compensation?
2) Is the Trustee's legal counsel entitled to compensation?
3) Are claim nos. 13 and 14 valid?

4)   Is the Debtor entitled to a claim of homestead, and should that claim
             come ahead of the creditors?

Each will be discussed in turn.

## KILE OBJECTION NO. 1:  Is the Trustee Entitled to Compensation?

### A.  Trustee Compensation - In General

The court may award trustees, like other professionals, "reasonable compensation for actual, necessary services rendered by the trustee . . . . and reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a).  But, for trustees, Congress limited the amount a court may award for services to a percentage based upon the amount of monies disbursed or turned over in a specific case. 11 U.S.C. § 326(a).  The court need not award the maximum fee, Southwestern Media, Inc. v. Rau, 708 F.2d 419, 424 (9th Cir 1983), but may exercise its discretion as to the reasonableness thereof.

The standards for compensation in administering a chapter 7 case are the same for both attorney and non-attorney trustees. 3 Collier on Bankruptcy ¶ 326.02[3] (15th ed. rev. 2009); See Sousa v. Miguel (In re United States Trustee), 32 F.3d 1370 (9th Cir. 1994)).  It is the trustee's burden to establish that he is entitled to the fees requested.  In re Roderick Timber Co., 185 B.R. 601, 605 (9th Cir. BAP 1995) .  Trustees must maintain accurate records of time expended and services performed on behalf of the estate.  Id.; see also Matter of Beverly Crest Convalescent Hosp., Inc., 548 F.2d 817, 820 (9th Cir. 1976); 11 U.S.C. § 330(a); FED. R. BANKR. P. 2016.

The BAP explained:

> As the fact finder, the court must evaluate the sufficiency of the evidence provided by the trustee in support of the fee application. Due to the nature of the trustee's responsibilities, the court may determine that the trustee need not keep time records as detailed as those of an attorney. See, e.g., *In re Missionary Baptist Foundation of America*, 77 B.R. 552, 554 (N.Tex.1987) (Where trustee was operating an ongoing business and attempting to reorganize the debtor, it was "not realistic to expect the Trustee to prepare a time slip on each function that he perform[ed] during the day."). However, in every case, "a court should only award fees to the level that has been proven

5

to be actual, necessary and reasonable. Any lesser requirement would make the applicant's burden of proof a mere shell." *Matter of Evangeline Refining Co.*, 890 F.2d 1312, 1327 (5th Cir.1989).

Roderick Timber, 185 B.R. at 606.

### B. Debtor's Objections To Trustee's Compensation

The Trustee has requested the maximum fee allowable under § 326(a), in the sum of $13,740.66, and reimbursement of $240.64 in costs.

Debtor maintains that the Trustee is not entitled to any compensation because he allegedly breached his fiduciary duty by failing to expeditiously administer the estate, as required under § 704(1). One of the Trustee's primary duties is the expeditious collection of assets for distribution to the estate's creditors. In re AFI Holding, Inc., 530 F.3d 832, 845 (9th Cir. 2008). In performance of the duties under § 704, the Trustee also has a fiduciary duty to all creditors of the estate to protect their interests against dissipation of any assets of the estate. Towe v. Martinson, 195 B.R. 137, 140 (D. Mont. 1996) (citing In re Rigden, 795 F.2d 727, 730 (9th Cir.1986)) (Trustee has the duty to maximize distribution to creditors). Where there are surplus funds, the trustee also owes a fiduciary duty to the debtor. See In re Stoll, 252 B.R. 492, 495 n.4 (9th Cir. BAP 2000); In re Ebel, 338 B.R. 862, 874 (Bankr. D. Colo. 2005); In re George Schumann Tire and Battery Co., 145 B.R. 104, 107 (Bankr. M.D. Fla. 1992).

### C. Time Records and Improper Delegation

Debtor contends that the Trustee failed to provide any records of the time expended and the tasks he performed, and improperly delegated his duties.

In awarding a reasonable trustee's fee, a court must consider "the nature, the extent, and the value of such services, taking into account all relevant factors, including --

(A) the time spent on such services;

|   |     |                                                                                                                                                                 |
|---|-----|-----------------------------------------------------------------------------------------------------------------------------------------------------------------|
|   | (B) | the rates charged for such services;                                                                                                                            |
|   | (C) | whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title; |
|   | (D) | whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; |
|   | (E) | with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and   |
|   | (F) | whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title. |

11 U.S.C. § 330(a)(3).

Here, the Trustee did not submit any time or service records other than the asset receipt and disbursement records. Of course, the court can take note of its own file. FED. R. EVID. 201. Thus, the court does know, from the file itself, that the work involved in the administration of this case was not routine. Moreover, it took several years to complete.

From the date of the Trustee's appointment on or shortly after June 14, 2005 (Dkt. 81), to the present, there have been 220 administrative docket entries. In addition, the Trustee and his counsel had to become involved in litigation over the Solana Beach proceeds, in Adversary 05-9. This suit was settled in various ways, and the Trustee made some distributions pursuant to court orders.

The Trustee was also required to become involved in a California state court action brought, post-petition, by the Debtor, and to engage special counsel there.

Also, in Adversary 04-61, the Trustee was required to defend an appeal brought by the Mudge Group regarding an attorneys' fee issue, in litigation that had been originally commenced by the Debtor, as part of his chapter 11 case.

Throughout the case, the court record indicates that the Trustee was required to administer excess proceeds in the amount of $274,287.10, analyze and respond to pleadings filed by various creditors and the Debtor, process claims objections, communicate with parties including the Debtor and his ex-wife, and shepard the entire matter to a conclusion. Were the court to require

the Trustee, at this late date, to reconstruct time records of his efforts, at $100 - $125 per hour, it is apparent that over the four years that he has been engaged, he has spent a minimum of at least 100 - 150 hours on this case. The court will not require the Trustee to perform a futile act, when it is apparent that the Trustee could easily account for that number of hours, over a four-year period of administration, and therefore justify the fee requested, up to the percentages allowed by § 326(a).

As for the Debtor's concerns that the Trustee improperly "delegated" his duties to another, the Debtor fails to provide any detail as to that charge. Except for such general statement, this court was provided no facts upon which to base a decision. Therefore, this objection is overruled for vagueness and lack of specificity.

Thus, the Debtor's objections on lack of "time records" and "delegation" are overruled.

## D.  Premature Withdrawal from Interest-Bearing Account

The Debtor does raise one point that has merit. He notes that, although the administration of this cases ended about one year ago, in June 2008, the Trustee did not file his final account and report until March 22, 2009. At the same time, however, Mr. Kile notes that the Trustee moved the funds on hand from an interest-bearing account to a non-interest bearing account. This point is not disputed by the Trustee.

Since Mr. Kile is the only creditor or party in interest who raised this issue, only Mr. Kile's distribution is affected. Other creditors have waived the argument. Under the proposed distribution, Mr. Kile's share is $15,503.17. Had the Trustee kept the funds in an interest-bearing account from June, 2008 to March 1, 2009, at a conservative 5% interest, Mr. Kile's share would have been increased by $581.36. Accordingly, the Trustee's requested fee of $13,740.66 shall be reduced by $581.36, and Mr. Kile's share, only, shall be increased by such amount, to $16,084.53.

There shall be no such penalty assessed from March 1, 2009, forward, because custom and practice allows a trustee to cut off interest-bearing accounts just prior to calculating a final account and report, for ease of administration. Otherwise, the figures would be constantly fluctuating.

From the date that the Trustee filed his final account (March 22, 2009), to the present, any delays are not of the Trustee's doing, because he cannot control who files objections, nor the length of time it takes a court to hear and decide those issues.

Thus, this objection is granted in part and overruled in part.

### E. Other Specific Charles Relating to Trustee Compensation

#### 1. Intentional Misrepresentation

Debtor alleges that the Trustee misrepresented to him, in April of 2008, that he would file the Final Report and Distribution "forthwith" while he allegedly had no intent to file it. Mr. Kile alleges that he was injured by such intentional misrepresentation. Standing alone, these allegations are insufficient to prove fraud or damages, and no proof of either was attached in order to support such assertions. Therefore, they are overruled, except to the extent set forth above, concerning the interest-bearing nature of the funds on hand.

#### 2. Constructive Fraud

Debtor alleges that the Trustee committed "constructive fraud" by failing to disclose that he was only a "part-time" Trustee for the past two years. The fact that the Trustee may have had other employment does not meet the requirements for "constructive fraud" nor otherwise deprive the Trustee of a commission. Debtor provided no evidence or law that a trustee is required to be a full-time panel trustee in order to be compensated for performing statutory duties. Standing alone, there is nothing to support that service as a "part-time" trustee compels a conclusion that the trustee is barred from being paid for his services. If the trustee is appointed by the U.S. Trustee, on a full or even part-time panel, the debate ends. There being no legal merit to this argument, it is overruled.

### 3. Breach of Fiduciary Duty and Gross Negligence

Here, Debtor makes a series of contentions.

### (a) Objections to Claims

Debtor alleges that the Trustee failed to object to certain proofs of claim that were facially defective. This grievance is moot, since Debtor, who also had standing to do so, objected to those claims himself. And, according to the Trustee, Debtor failed to provide documentation of his alleged objections in order for the Trustee to prosecute them. There is insufficient evidence of any wrongdoing by the Trustee, and all of the objections (by either party) that were filed have been heard and adjudicated on their merits. Since no harm is alleged, the objection on this basis is moot.

### (b) Arizona Tax Lien

Debtor contends that the Trustee failed to expeditiously administer the estate and that such delay caused an Arizona tax lien to be filed against him. If that priority tax claim should have been paid earlier, the Debtor could have requested early payment to such creditor. The record does not reflect that he did so. In fact, the Trustee's proposed distributions include payments to Arizona tax entities. The Trustee proposes to pay $832.31 and $3,661.68 on Arizona taxes (Dkt 289). Therefore, this grievance is without merit, as payment in full will result in a release of any lien. As the Debtor's pleading also notes that he is "homeless," the court has doubts that such lien harmed Debtor, as there was no tangible asset to which it could attach (Dkt. 293, para 19). This objection is overruled as moot.

### (c) Failure to Abandon

Debtor alleges that the Trustee was unwilling to abandon or prosecute Debtor's personal claims against various parties, and complains that now the statute of limitations has run. Again, the administrative record does not show that Debtor ever moved the court to compel abandonment, § 554, by which any such claims might have been returned to him, if the Trustee felt they were valueless.

Section 554(b) provides that "a party in interest" can move for abandonment, and after notice and a hearing, the court may order a scheduled asset to be abandoned if it is burdensome to the estate or is of inconsequential value. The administrative record in this case reflects no such motion being ever made by the Debtor. If the Debtor was concerned about the statute of limitations as to any claim, he should have utilized this statutory remedy and requested abandonment. That he did not do so is not the fault of the Trustee. Nor can the Debtor blame the Trustee for the business decision not to chase, through litigation, all of the Debtor's perceived injuries.[4]

Moreover, the Debtor fails to articulate exactly what "claims" he is referring to, nor what the causes of action were, nor when any limitations period ended.

In his Schedule B (Dkt. 17), the Debtor lists various claims. Some parties were included in adversary proceedings before this court. If others were subject to the Debtor's claims, it was the Debtor's responsibility to seek a timely abandonment order. Thus, Debtor's grievance is too vague to reflect negatively on the Trustee's performance.

This objection is overruled.

---

[4] This type of business judgment, in this case, is especially apropros in view of the Debtor's disastrous litigation experience, and the positions taken by him, in his Chapter 11 Adversary 04-61.

### (d) Interim Payments to Creditors

Debtor alleges that the Trustee wrongly paid out $40,000 to unsecured creditors as a priority administrative expense. He objects to the payment for the foreclosing creditors' attorneys' fees. This disbursement was made pursuant to a court approved stipulated order that the payment should be immediately disbursed. <u>See</u> Dkt. 100, Adversary 04-61. Mr. Kile appealed that order, and his appeal was dismissed for failure to prosecute. Therefore, that payment order is final, is <u>res judicata</u>, and may not be collaterally attacked here. This objection is overruled.

### (e) Other Contentions

Any other miscellaneous charges by the Debtor against the Trustee, made throughout the objection and not fully articulated or supported, do not amount to actionable allegations. Therefore, to the extent that the court has not otherwise disposed of them, they are overruled.

**KILE OBJECTION NO. 2: Is the Trustee's Counsel Entitled to Compensation?**

Debtor also objects to any distribution to Trustee's counsel, Gibson, Nakamura & Green, for attorney's fees. However, such compensation was previously approved by the court pursuant to interim and final applications that were not objected to by Debtor. Those orders are now final and unappealable. They were entered:

| Item | Docket | Date | Fees[5] | Costs |
|---|---|---|---|---|
| First interim fee application | 132 | 06/05/2006 | $9,074 | $87.13 |

---

[5] The court also approved a $1,512.00 fee to special counsel, regarding the suit filed by the Debtor in California state court (Dkt. 215)

| | | | | |
|---|---|---|---|---|
| Second interim fee application | 166 | 09/25/2006 | 1,057 | 77.46 |
| Third and final fee application | 274 | 10/19/2007 | 8,134 | 154.12 |
| **TOTALS** | | | **$18,265** | **$318.71** |

In each application, Trustee's counsel provided an itemized and detailed breakdown of all work performed, and the time it took, as well as an attorney's declaration. Mr. Kile did not object then, and he articulates no factual or legal reason to alter those orders here. Moreover, it is puzzling why Mr. Kile argued that Gibson, Nakamura & Green failed to provide detailed statements, when the record is clear that that firm in fact did so.

Mr. Kile also maintains that Gibson, Nakamura & Green "breached the standard of care" relative to certain legal positions taken or not taken. This argument smacks of a claim for legal malpractice. But it too fails, for two very prominent reasons: (1) Gibson, Nakamura & Green is the counsel for the Trustee, not the Debtor, and therefore the firm owes no professional duties to Mr. Kile, and (2) allegations of professional malpractice must be supported by another professional who has the credentials to opine on such an issue. The opinions of a layman are inadequate to state such a claim.

Thus, this basis for objection is overruled.

### KILE OBJECTION NO. 3: Are Claims Nos. 13 and 14 Valid?

As noted in the factual "overview" section of this decision, objections to claim nos. 13 and 14 were heard and adjudicated on December 9, 2006, and again on February 12, 2008. These rulings are final, and the court has been given no reason, pursuant to FED. R. BANKR. P. 9024 (applying FED. R. CIV. P. 60), as to why it must set aside its orders with respect to these claims.

The Debtor's requests to again consider his objections to claim nos. 13 and 14 are denied.

> **KILE OBJECTION NO. 4: Is the Debtor Entitled to a Claim of Homestead, and Should That Claim Come Ahead of the Creditors?**

Debtor alleges that the Trustee failed to object to Debtor's Amended Schedule C claim of California homestead exemption in the sale proceeds. Therefore, Debtor contends that the Trustee waived any objection to the exemption claim and has not fulfilled his duty to turn over $150,000 of the Funds to Debtor.

Debtor's position is that, since the Trustee failed to object to his amended exemption claim, that he is entitled to receive his entire $150,000 homestead exemption from the funds on hand. The court disagrees, because specific Ninth Circuit law, directly on point, leaves the Debtor with no such remedy.

For this issue, the relevant chronology of events is as follows:

| | |
|---|---|
| <u>March 29, 2004</u> | Foreclosure of Solana Beach property. After sale costs and liens are paid, a surplus of $274,287.10 remains. Eventually, that sum was turned over to the Chapter 7 Trustee. |
| <u>May 7, 2004</u> | Edward Kile (Debtor), not joined by wife, Robyn Kile, files a chapter 11 case in Arizona (Dkt. 1). |
| <u>June 21, 2004</u> | Mr. Kile files Schedule C, claiming the <u>California</u> Solana Beach property as exempt under the <u>Arizona</u> exemption statute, ARIZ. REV. STAT. § 33-1101 (Dkt. 18). |
| <u>June 29, 2005</u> | Case converted to chapter 7. Trustee appointed. (Dkt. 81.) |

| | | |
|---|---|---|
| <u>May 24, 2007</u> | | Debtor files Amended Schedule C regarding the Solana Beach property, claiming a $150,000 homestead claim under CAL. CIV. PROC. CODE § 704.730(3) (Dkt. 238). |

The Debtor's original claim of exemption was lost, due to passage of time. His later amendment also fails, for reasons discussed below. Both the Arizona and California statutes, which created such exemptions, are temporal. In Arizona, if the exempt proceeds are not spent or rolled into a new homestead within 18 months after they are created, the exemption is irretrievably lost. In California, the time period for reinvestment is only six months.

The sale proceeds were, at the time of the bankruptcy filing on June 21, 2004, clearly an asset of the estate. § 541(a). The Debtor simply claimed that they were exempt from the claims of creditors,[6] and selected the applicable Arizona exemption statute, ARIZ. REV. STAT. § 33-1101. But, when 18 months after the March 29, 2004 trustee's sale (which generated the funds) came and went on September 29, 2005, and the funds had not been retrieved from the trustee and utilized as the Arizona statute required, the exemption was lost, and the asset became disentangled and floated free from the Debtor's exemption claim. Thus, the Trustee could thereafter use the monies to pay creditors. The Bankruptcy Appellate Panel of the Ninth Circuit's case of <u>In re Konnoff</u>, 356 B.R. 201 (9th Cir. BAP 2006) is exactly on point. That case arose in Arizona, and the BAP held:

> . . . once the 18-month time limit under A.R.S. § 33-1101(C) passed without reinvestment of the sale proceeds in a new homestead property, those proceeds lost their exempt character, and the trustee could claim them for distribution to creditors.

<u>Id</u>. at 204. In passing, the BAP noted that the same result would apply to California's less liberal six-month limited exemption. <u>Id</u>. at 205.

Thus, since the exemption under the longer Arizona statute had elapsed and expired by the time the Debtor filed his "amended" exemption claim, this time under the <u>California</u>

---

[6] Whether a debtor is entitled to claim an <u>Arizona</u> exemption in proceeds from the sale of a <u>California</u> residence need not be decided here, because the issue is capable of being decided on other grounds. All facts are tilted in the Debtor's favor, for purposes of this discussion, i.e., that the exemption was properly claimed.

exemption statute, on May 24, 2007 (Dkt. 238), there was no longer an asset in which an exemption could be claimed. And, under California law, the time to properly claim it had expired on September 29, 2004, almost three years earlier.

Since the Debtor never timely sought possession of those funds from the Trustee, he waived any claim thereto by inaction. The longest period, eighteen months from the forced sale of the residence, ended on September 29, 2005. At that time, and to this day, the monies from the sale of the California property have been continuously in the hands of the Trustee.

Now, the issue becomes whether an exemption claim, lost by inaction, can be resurrected by the filing of an "amended" Schedule C. It is clear that it cannot be.

First, as the BAP noted in Konnoff, the exemption, by statute, carries a time limit. Once that time passes, the exemption no longer exists, and is "lost." Konnoff at 204. The Debtor has cited no law to dispute that holding, nor to support any argument for the revival of an expired exemption.

Next, the Debtor claims that his "amended" exemption of Schedule C, which he filed over three years after his initial case was filed, defeats the Trustee because the Trustee failed to object thereto within a short 30-day window. For this authority, the Debtor cites FED. R. BANKR. P. 4003 and Taylor v. Freeland & Kronz, 503 U.S. 638 (1992).

In order for the Debtor to even gain a foothold to make these arguments, However, he must have served the Trustee and the Trustee's counsel with the Amended Scheduled C. FED. R. BANKR. P. 1009(a) provides, in pertinent part:

> A voluntary petition, list, schedule or statement may be amended by the debtor as a matter of course at any time before the case is closed. The debtor shall give notice of the amendment to the trustee and to any entity affected thereby.

(Emphasis added.) Cf., FED. R. CIV. P. 5 (Service); FED. R. BANKR. P. 9013, 9014.

The Amended Schedule C is found at Dkt. 238. However, nowhere within the body of that pleading, nor in any other pleading filed thereafter, does the Debtor provide evidence that he caused a copy to be served on the Trustee and the Trustee's counsel. There is no mailing

certificate, nor any other indication that the document was timely served, or indeed, served at all. Thus, the clock for the Trustee to object never began ticking.

Nor does the Taylor case assist the Debtor, as it is distinguishable from the facts of this case. In that case, the Trustee did have notice of the Debtor's original exemption claim, and failed to timely act. In the case at bar, however, we are dealing with an amended exemption claim:

1) made over three years after the original Schedule C was filed;
2) with no service of the filing having been made upon the Trustee or his counsel;
3) claiming a homestead in an exemption with a temporal limit which had passed years before;
4) over proceeds which had been known, in existence, and in the hands of the Trustee for over three years; and
5) in a 100% dividend case.

Had the Debtor acted in a timely manner, he could have, years before, sought those monies while the exemption was still viable, and reinvested them as the statute requires. The mandate of the Arizona statute is clear: use it or lose it. ARIZ. REV. STAT. § 33-1101(c); Konnoff. By failing to act, the Debtor has waived his right to said funds.

Third, the Debtor is judicially estopped form claiming a different statutory basis for the same property. In his original exemption claim, he specifically relied on an Arizona statute. Now, years later, the Debtor "amended" Schedule C to claim the benefit of another state's exemption statute. As noted above, under either statute, the exempt status under either Arizona or California law had expired years before. The Debtor is judicially estopped from changing positions regarding the same property, when all parties had a right and did--for years--to rely on his original choice. In re Hamilton, 270 F.3d 778 (9th Cir. 2002). And, in any event, changing the statute does not alter the legal outcome. Konnoff.

1    Fourth, as a policy matter, the Debtor's actions cannot be condoned. The Debtor made a choice as to which exemption statute applied. The Trustee acted to gather funds to pay creditors. The Debtor's inaction caused the exemption time limits to lapse. No "amendment" can resurrect the exemption. To allow such an amendment, at this late date, when such exemption no longer has legal existence, to the detriment of creditors who are now to be paid 100% of their debts, and to instead turn the money over to the Debtor, shocks the conscience. As a matter of bankruptcy policy, the "liberal" allowance of schedule amendments may not be used to create an injustice. See § 105(a).

This argument, seeking turnover of the lion's share of the liquid assets to the Debtor, is therefore overruled.

## **CONCLUSION**

In summary, Debtor has not presented sufficient grounds to object to the Trustee's proposed distribution of the Funds on hand, and his objections shall be overruled, except as noted above.

A separate order will be entered. FED. R. BANKR. P. 9021.

DATED AND SIGNED ABOVE.

| | | |
|---|---|---|
| 1 | COPIES served as indicated below on the date signed above: | |
| 2 | | |
| 3 | Edward Kile<br>(Last Known Address)<br>5151 Broadway, Suite 1600 | |
| 4 | Tucson, AZ 85711 | U.S. Mail |
| 5 | Daniel Dominguez<br>2210 N. Indian Ruins Road | |
| 6 | Tucson, AZ 85715 | Email: dandominguez@epiqtrustee.com |
| 7 | Scott D. Gibson<br>Gibson, Nakamura & Green | |
| 8 | 2329 N Tucson Blvd<br>Tucson, AZ 85716 | Email: Sgibson@gnglaw.com |
| 9 | | |
| 10 | Office of the U.S. Trustee<br>230 North First Avenue, Suite 204<br>Phoenix, AZ 85003-1706 | U.S. Mail |
| 11 | | |

By   /s/ M.B. Thompson
      Judicial Assistant